UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| DONALD DEISCHER, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Case No. 4:15-CV-625 NAB |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying Donald Deischer's application for disability insurance benefits under the Social Security Act, 42 U.S.C. § 423 *et seq.* Deischer alleged disability due to personality disorder, high blood pressure, learning disability, sleep apnea, bilateral finger numbness and tingling, hypothyroid condition, passing out, possible seizures, and anxiety. (Tr. 174.) The parties have consented to the exercise of authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). [Doc. 10.] For the reasons set forth below, the Court will affirm the Commissioner's final decision.

**I.  Background**

On April 23, 2012, Deischer applied for a period of disability and disability insurance, alleging disability since January 1, 2011. (Tr. 150–56.) The Social Security Administration ("SSA") denied Deischer's claim and he filed a timely request for hearing before an administrative law judge ("ALJ"). (Tr. 98-104.) The SSA granted Deischer's request for review and an administrative hearing was held on July 31, 2013. (Tr. 49-84.) Deischer, represented by

counsel, testified at the hearing. (Tr. 55-76, 83.) On October 21, 2013, the ALJ found that Deischer was not disabled as defined in the Society Security Act. (Tr. 13-31.) Deischer requested a review of the ALJ's decision from the Appeals Council. (Tr. 7–9.) On February 9, 2015, the Appeals Counsel of the Social Security Administration denied Deischer's request for review. (Tr. 1-4.) The decision of the ALJ thus stands as the final decision of the Commissioner. *See Sims v. Apfel*, 530 U.S. 103, 107 (2000).

Deischer filed this appeal on April 15, 2015. [Doc 1.] The Commissioner filed an Answer and the certified Administrative Transcript on June 22, 2015. [Docs. 11, 12.] Deischer filed a Brief in Support of the Complaint on September 28, 2015. [Doc. 19.] The Commissioner filed a Brief in Support of the Answer on October 23, 2015. [Doc. 20.] Deischer then filed a Reply Brief on November 5, 2015. [Doc. 21.]

## II.     Standard of Review

The Social Security Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The SSA uses a five-step analysis to determine whether a claimant seeking disability benefits is in fact disabled. 20 C.F.R. § 404.1520(a)(1). First, the claimant must not be engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). Second, the claimant must establish that he or she has an impairment or combination of impairments that significantly limits his or her ability to perform basic work activities and meets the durational requirements of the Act. 20 C.F.R. § 404.1520(a)(4)(ii). Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the appendix to the applicable regulations.

20 C.F.R. § 404.1520(a)(4)(iii). If the claimant's impairments do not meet or equal a listed impairment, the SSA determines the claimant's residual functional capacity to perform past relevant work. 20 C.F.R. § 404.1520(e).

Fourth, the claimant must establish that the impairment prevents him or her from doing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant meets this burden, the analysis proceeds to step five. At step five, the burden shifts to the Commissioner to establish that the claimant maintains the RFC to perform a significant number of jobs in the national economy. *Singh v. Apfel,* 222 F.3d 448, 451 (8th Cir. 2000). If the claimant satisfies all of the criteria under the five-step evaluation, the ALJ will find the claimant to be disabled. 20 C.F.R. § 404.1520(a)(4)(v).

The standard of review is narrow. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). This Court reviews decisions of the ALJ to determine whether the decision is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find adequate support for the ALJ's decision. *Smith v. Shalala,* 31 F.3d 715, 717 (8th Cir. 1994). The court determines whether evidence is substantial by considering evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Cox v. Barnhart*, 471 F.3d 902, 906 (8th Cir. 2006). The Court may not reverse just because substantial evidence exists that would support a contrary outcome or because the Court would have decided the case differently. *Id.* If, after reviewing the record as a whole, the Court finds it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's finding, the Commissioner's decision must be affirmed. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). To

determine whether the ALJ's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole to consider:

> (1) The findings of credibility made by the ALJ;
>
> (2) The education, background, work history, and age of the claimant;
>
> (3) The medical evidence given by the claimant's treating physician;
>
> (4) The subjective complaints of pain and description of the claimant's physical activity and impairment;
>
> (5) The corroboration by third parties of the claimant's physical impairment;
>
> (6) The testimony of vocational experts based upon prior hypothetical questions which fairly set forth the claimant's physical impairment; and
>
> (7) The testimony of consulting physicians.

*Brand v. Sec'y of Dept. of Health, Educ. & Welfare,* 623 F.2d 523, 527 (8th Cir. 1980).

### III. Discussion

Deischer presents three issues for review. Deischer claims that the ALJ improperly analyzed the effects of his obesity, failed to provide adequate limitations within the RFC determination to account for his frequent loss of consciousness, and improperly determined his credibility. Defendant asserts that the ALJ's decision is supported by substantial evidence in the record as a whole and it should be affirmed.

#### A. Consideration of Obesity

Although not stated clearly, it appears that Deischer is alleging that the ALJ failed to develop the record regarding whether obesity may have contributed to a finding that his

syncopal[1] episodes medically equaled Listing 4.05. Deischer states that the ALJ's analysis regarding whether he met a Listing focused solely on mental impairments.

The ALJ has a duty to fully develop the record. *Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006). In some cases, this duty requires the ALJ to obtain additional medical evidence, such as a consultative examination of the claimant, before rendering a decision. *See* 20 C.F.R. § 404.1519a(b). "There is no bright line test for determining when the [Commissioner] has failed to develop the record. The determination in each case must be made on a case by case basis." *Battles v. Shalala*, 36 F.3d 43, 45 (8th Cir. 1994). A claimant for social security disability benefits has the responsibility to provide medical evidence demonstrating the existence of an impairment and its severity during the period of disability and how the impairment affects the claimant's functioning. 20 C.F.R. § 404.1512. The ALJ's duty is not never-ending and an ALJ is not required to disprove every possible impairment. *McCoy v. Astrue*, 648 F.3d 605, 612 (8th Cir. 2011).

The listing of impairments in Appendix 1 describes for each of the major body systems impairments considered to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience. 20 C.F.R. § 404.1525(a). Merely being diagnosed with a condition named in a listing and meeting some of the criteria will not qualify a claimant for presumptive disability under the listing." *McCoy*, 648 F.3d at 612; 20 C.F.R. § 404.1525(d) (an impairment cannot meet a listing based solely on a diagnosis). "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria." *Jones v. Astrue*, 619 F.3d 963, 969 (8th Cir. 2010) (emphasis in original). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify."

---

[1] Syncope is a temporary suspension of consciousness due to generalized cerebral ischemia." Dorland's Illustrated Medical Dictionary 1818 (37th ed. 2012). Syncope is commonly referred to as fainting.

5

*Sullivan v. Zebley*, 493 U.S. 521, 529-30 (1990) (superseded by statute on other grounds). To establish equivalency, a claimant must present medical findings equal in severity to all the criteria for the one most similar listed impairment." *Carlson v. Astrue*, 604 F.3d 589, 594 (8th Cir. 2010). "The claimant has the burden of proving that his impairment meets or equals a listing." *Id.* at 593. "There is no error when an ALJ fails to explain why an impairment does not equal one of the listed impairments as long as that overall conclusion is supported by the record." *Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011).

"Obesity is a complex, chronic disease characterized by excessive accumulation of body fat." SSR 02-1p, 2002 WL 34686281 at * 2 (Sept. 12, 2002). "Because there is no listing for obesity, [the SSA] will find that an individual with obesity meets the requirements of a listing if he or she has another impairment that, in combination with obesity, meets the requirements of a listing." *Id.* at 5. Obesity, by itself, may also be medically equivalent to a listed impairment or if an individual has multiple impairments, including obesity, in combination may be equivalent in severity to a listed impairment. *Id.* "Obesity in combination with another impairment may or may not increase the severity of functional limitations of the other impairments." *Id.* at 6. Listing 4.05 provides the following:

> Recurrent arrhythmias[2], not related to reversible causes, such as electrolyte abnormalities or digitalis glycoside or antiarrhythmic drug toxicity, resulting in uncontrolled (see 4.00A3f), recurrent (see 4.00A3c) episodes of cardiac syncope or near syncope (see 4.00F3b), despite prescribed treatment (see 4.00B3 if there is no prescribed treatment), and documented by resting or ambulatory (Holter) electrocardiography, or by other appropriate medically acceptable testing, coincident with the occurrence of syncope or near syncope (see 4.00F3c).

20 C.F.R. Part 404, Subpart P, Appendix 1.

---

[2] Arrhythmia is "a disturbance in or loss of regular rhythm; especially any variation from the normal rhythm of the heartbeat." Dorland's Illustrated Medical Dictionary 133 (37th ed. 2012).

In this case, the ALJ found that Deischer's morbid obesity and syncopal/pre-syncopal episodes were severe impairments. The ALJ did not find, however, that Deischer's morbid obesity and syncopal episodes singly or in combination met or equaled a listing. Deischer does not provide any support for his contention that the ALJ should have consulted a medical expert or ordered additional tests. "The ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled." *McCoy*, 648 F.3d at 612. Therefore, "[a]n ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision." *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995).

The medical record does not support Deischer's claim. The medical record indicates that Deischer's doctors did not know the source of his syncopal episodes. In August 2012, echocardiogram[3] showed left atrial enlargement, marked concentric left ventricular hypertrophy, but no left ventricular enlargement. (Tr. 366.) Deischer participated in a Holter's monitoring test[4] and the results were consistent with premature ventricular contraction and possibly supraventricular tachychardia[5]. (Tr. 366.) Deischer's original cardiac work-up was minimal and the Holter monitoring showed no events during that time. (Tr. 345.) In April, June, and July 2013, Dr. Joseph Ruwitch, a cardiologist, indicated that he believed that the syncope symptoms

---

[3] "Echocardiography is a noninvasive ultrasound procedure used to evaluate the structure and function of the heart." KATHLEEN DESKA PAGANA & TIMOTHY J. PAGANA, MOSBY'S MANUAL OF DIAGNOSTIC AND LABORATORY TESTS 877 (5th ed. 2014).

[4] Holter monitoring is a "continuous recording of the electrical activity of the heart. … The patient is asked to carry a diary and record daily activities, as well as any cardiac symptoms that may develop during the period of monitoring. … The Holter monitor is used primarily to identify suspected cardiac rhythm disturbances and to correlate these disturbances with symptoms such as dizziness, syncope, palpitations, or chest pain." KATHLEEN DESKA PAGANA & TIMOTHY J. PAGANA, MOSBY'S MANUAL OF DIAGNOSTIC AND LABORATORY TESTS 571 (5th ed. 2014).

[5] Ventricular tachychardia is an "abnormally rapid ventricular rhythm with aberrant ventricular rhythm … usually in excess of 150 per minute." Dorland's Illustrated Medical Dictionary 1868 (37th ed. 2012).

7

appeared to be spells of falling asleep, possibly narcolepsy[6]. (Tr. 397, 414, 418.) Dr. Ruwitch recommended no further cardiac testing, because there was little to tie the syncope and tachychardia together. (Tr. 419.) Dr. Barbara Lutey, the pulmonologist, stated that based on the pulmonary function tests, Deischer's lung abnormality is so minor that it is probably not contributing much to symptoms. (Tr. 364.) She also noted that the etiology of his dizziness and near syncope is unclear. (Tr. 364.) Dr. Rachel Darken, the neurologist, did not find any neurological basis for his syncopal episodes. (Tr. 377-82.) Dr. Darken noted that he had not had any hypnagogic or hypnopompic hallucinations. (Tr. 377, 380.) Dr. Gabriela deBruin[7], also a neurologist, ruled out cataplexy[8], because he actually lost consciousness not just muscle tone. (Tr. 401.) Dr. deBruin opined that the dizziness or syncope could be due to arrhythmias or excessive sleepiness. (Tr. 410.)

Plaintiff has not identified what additional testing the ALJ should have ordered. Deischer has been examined by cardiology, pulmonology, and neurology specialists multiple times. All of the doctors advised Deischer that a reduction of weight could relieve his symptoms. (Tr. 293, 379, 382, 405, 415, 419.) The record shows that the doctors thoroughly evaluated Deischer's symptoms in relation to his obesity and the ALJ's findings are consistent with those evaluations. *See Boettcher*, 652 F.3d at 863 (no error when ALJ fails to explain why impairment does not equal listing as long as overall conclusion is correct); *Heino v. Astrue*, 578 F.3d 873, 881 (8th Cir. 2009) (when an ALJ references claimant's obesity during the claim evaluation process, such review may be sufficient to avoid reversal). The ALJ mentions the effects of Deischer's obesity

---

[6] Narcolepsy is "recurrent, uncontrollable, brief episodes of sleep; often associated with hypnagogic or hypnopompic hallucinations, cataplexy, and sleep paralysis." Dorland's Illustrated Medical Dictionary 1232 (37th ed. 2012).
[7] Dr. deBruin's name is spelled various ways in the record. The Court will use the spelling contained in Dr. deBruin's signature.
[8] Cataplexy is "a condition in which there are abrupt attacks of muscular weakness and hypotonia triggered by an emotional stimulus such as mirth, anger, fear, or surprise. It is often associated with narcolepsy." Dorland's Illustrated Medical Dictionary 1232 (37th ed. 2012).

throughout the opinion. Based on a review of the evidence in the record as a whole, the Court finds that the ALJ met her obligation to develop the record regarding Deischer's obesity and its possible relationship to his syncope.

### B. Credibility

Next, Deischer asserts that the ALJ erred in three portions of the credibility analysis. In considering subjective complaints, the ALJ must fully consider all of the evidence presented, including the claimant's prior work record, and observations by third parties and treating examining physicians relating to such matters as:

(1) The claimant's daily activities;

(2) The subjective evidence of the duration, frequency, and intensity of the claimant's pain;

(3) Any precipitating or aggravating factors;

(4) The dosage, effectiveness, and side effects of any medication; and

(5) The claimant's functional restrictions.

*Polaski v. Heckler*, 725 F.2d 1320, 1322 (8th Cir. 1984). It is not enough that the record contains inconsistencies; the ALJ is required to specifically express that he or she considered all of the evidence. *Id.* Although an ALJ may not discredit a claimant's subjective pain allegations solely because they are not fully supported by objective medical evidence, an ALJ is entitled to make a factual determination that a claimant's subjective pain complaints are not credible in light of objective medical evidence to the contrary." *Gonzales v. Barnhart*, 465 F.3d 890, 895 (8th Cir. 2006). The ALJ, however, "need not explicitly discuss each *Polaski* factor." *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir. 2004). The ALJ need only acknowledge and consider those factors. *Id.* Although credibility determinations are primarily for the ALJ and not the

9

court, the ALJ's credibility assessment must be based on substantial evidence. *Rautio v. Bowen*, 862 F.2d 176, 179 (8th Cir. 1988).

In this case, the ALJ found several reasons to discount Deischer's credibility. The ALJ noted inconsistencies between Deischer's testimony and the doctor's treatment notes, Deischer's claim that he had changed his diet and exercised being unsupported by any weight loss, non-compliance with treatment, and lack of severe clinical findings to lessen his credibility. (Tr. 18-20, 26-29.)

### 1. Failure to Follow Prescribed Treatment

Deischer contends that the ALJ erred in discounting his credibility for the failure to lose weight before finding that he was disabled because of obesity or a combination of obesity and another impairment. SSR 02-1p states

> Before failure to follow prescribed treatment for obesity can become an issue in a case, we must first find that the individual is disabled because of obesity or a combination of obesity and another impairment(s). Our regulations at 20 CFR 404.1530 and 416.930 provide that, in order to get benefits an individual must follow treatment prescribed by his or her physician if the treatment can restore the ability to work, unless the individual has an acceptable reason for failing to follow the prescribed treatment. We will rarely use 'failure to follow prescribed treatment' for obesity or to deny benefits.

SSR 02-1p at *9.

Deischer testified that over ten years ago, he lost 183 pounds. (Tr. 68.) He also testified that at the time of the hearing all of his food portions were significantly smaller now and he ate two to three meals per day and a light-night snack. (Tr. 69.) The ALJ noted that several of Deischer's medical providers recommended that he lose weight, but he has not lost any weight during the relevant time period. (Tr. 19.) The ALJ stated that Deischer's claim that he has

changed his diet is not credible, because he has not lost any weight and he successfully lost a significant amount of weight several years ago. (Tr. 19-20.) Deischer asserts that the ALJ violated the spirit and letter of SSR 02-1p, by framing Deischer's lack of weight loss as a credibility issue.

The ALJ can determine whether a claimant's testimony is consistent with the medical evidence of record. The ALJ acknowledged that there was a question whether weight loss was recommended or prescribed, but found that the inconsistency between Deischer's testimony and his weight loss damaged his credibility. The ALJ cannot speculate regarding whether a claimant's failure to lose weight is willful. "The notion that all [obese] people are self-indulgent souls who eat more than anyone ought appears to be no more than the baseless prejudice of the intolerant svelte. Modern studies debunk this myth." *Stone v. Harris*, 657 F.2d 210, 212 (8th Cir. 1981). Evidence of a previous weight loss is not substantial evidence of a present ability to lose weight. *Id.* "The proper question is not whether [the claimant's] obesity is clinically remediable, but whether it is reasonably remediable by [him]." *Brown v. Sullivan*, 902 F.2d 1292, 1296 (8th Cir. 1990) (citing *Stone*, 657 F.2d at 212)). There is no evidence in the record specifically assessing Deischer's inability to lose weight was willful. Therefore, the ALJ erred in assuming that Deischer's lack of weight loss meant that he was dishonest about changing his diet.

But, even if the ALJ erred in this portion of the credibility analysis, it is not reversible error. The ALJ noted other instances in the record where Deischer failed to follow treatment directed by his doctors. These instances of noncompliance included not getting lab tests and not taking medicine as prescribed. (Tr. 285, 379, 382.) There is also a lack of severe clinical findings. Because the ALJ had multiple reasons to discredit Deischer's credibility, the error was

harmless and Deischer has not shown that the ALJ would have ruled differently absent this error. *See Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012) (to show that an error was not harmless, a claimant must provide some indication that the ALJ would have decided the case differently if the error had not occurred).

### 2. Work History

Deischer then claims that the ALJ did not afford him substantial credibility based on his long and consistent work record. "[A] claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability." *Nunn v. Heckler,* 732 F.2d 645, 648 (8th Cir.1984.). A consistent work record supports the credibility of a disability claimant. *Hutsell v. Massarani*, 259 F.3d 707, 713 (8th Cir. 2001). In this case, Deischer has had a consistent work history earning over $20,000.00 per year between 2004 and 2010. (Tr. 165.) The ALJ did not specifically address Deischer's substantial gainful employment as a credibility issue, but the ALJ mentioned Deischer's work as a corrections officer, which means that the ALJ did consider the evidence. An ALJ is not required to discuss every piece of evidence submitted. *Wildman v. Astrue*, 596 F.3d 959, 966 (quoting *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998)). The Court agrees that a claimant's credibility is enhanced by his long and substantial work record. A good work history, however, does not negate any other credibility findings that may be made by the ALJ. In this case, although Deischer has a good work history, the ALJ found other reasons to discredit his credibility. Therefore, the Court finds that if there was any error in failing to specifically mention Deischer's good work history, it was harmless error. *See Byes*, 687 F.3d at 917 (to show that an error was not harmless, a claimant must provide some indication that the ALJ would have decided the case differently if the error had not occurred).

### 3. Consideration of Evidence Regarding Limited Sleep

Next, Deischer claims that the ALJ erred in discounting the credibility of Deischer and his mother regarding his limited sleep, because Dr. Darken noted that Deischer only obtained limited sleep during a sleep study. Deischer specifically takes issue with the following statements in the ALJ opinion:

> Although the claimant and his mother have described daily activities that are fairly limited, two factors weigh against considering these allegations to be strong evidence in favor of finding the claimant disabled. First, allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty. Secondly, even if the claimant's daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed in this decision.

(Tr. 28.) Deischer's assertion that the ALJ discounted Deischer and his mother's testimony regarding limited sleep is not supported by the record. The ALJ specifically notes the findings in the sleep study that "only limited sleep was obtained at this pressure[9]." (Tr. 21.) The ALJ's opinion details numerous instances in the record of Deischer's and his doctors' notations regarding his limited sleep, including objective medical tests. (Tr. 18-19, 21-24.) The ALJ did not state that Deischer's claims of limited sleep were not credible. Limited sleep during the sleep studies was noted more than once in the record. (Tr. 291-92, 377, 380-82.) The ALJ discounted Deischer and his mother's claim that his daily activities were not as limited as they claimed. Although limited sleep can affect daily activities, Deischer's claim that the ALJ did not consider evidence of limited sleep is not supported in the record. Moreover, the record showed

---

[9] The Court notes that the ALJ referred to the wrong exhibit when referencing the results of the sleep study. Exhibit 1F in the Administrative Record includes Deischer's school records and did not include any medical evidence.

13

that Deischer's behavior contributed to his daytime sleepiness and limited sleep, including napping during the day, not using his BiPap consistently, watching TV in bed, and lack of regular wakeup times and bedtimes. (Tr. 378-79, 381-82.) Therefore, the Court finds that the ALJ did not err in her consideration of Deischer's claims of limited sleep and its effects on his daily activities.

### C. RFC Determination

Finally, Deischer asserts that the ALJ's RFC determination is not supported by substantial evidence, because the ALJ failed to sufficiently allow for Deischer's frequent loss of consciousness in the RFC. The Commissioner responds the ALJ specifically accounted for the syncopal episodes by limiting Deischer's exposure to work hazards and limiting him to simple, routine, repetitive tasks. (Tr. 17–18, 21.)

The RFC is defined as what the claimant can do despite his or her limitations, and includes an assessment of physical abilities and mental impairments. 20 C.F.R. § 404.1545(a). The RFC is a function-by-function assessment of an individual's ability to do work related activities on a regular and continuing basis.[10] SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). It is the ALJ's responsibility to determine the claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and the claimant's own descriptions of his limitations. *Pearsall*, 274 F.3d at 1217. RFC is a medical question. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). An RFC determination made by an ALJ will be upheld if it is supported by substantial evidence in the record. *See Cox*, 471 F.3d at 907. In making a disability determination, the ALJ shall "always consider the medical opinions in the case record together with the rest of the relevant evidence in the record." 20 C.F.R.

---

[10] A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule. SSR 96-8p, 1996 WL 374184, at *1.

§ 404.1527(b). "A disability claimant has the burden to establish [his] RFC." *Eichelberger*, 390 F.3d at 591 (citing *Masterson*, 363 F.3d at 737).

The ALJ determined that Deischer had the severe impairments of morbid obesity, severe obstructive sleep apnea, history of syncope/pre-syncopal episodes, vertigo, impulse control disorder, not otherwise specified, antisocial personality disorder, and learning disorder. (Tr. 15.) The ALJ found that Deischer has the RFC to perform sedentary work with the following limitations: (1) never climb ladders, ropes, or scaffolds; (2) occasionally climb ramps and stairs and balance and stoop; (3) avoid all exposure to hazards, including unprotected heights, moving machinery, and dangerous machinery; (4) avoid even moderate exposure to vibration; (5) limited to simple, routine, repetitive tasks in a low stress job, with only occasional changes in the work setting: (6) unable to perform at a production rate pace, but can perform goal-oriented work that can be checked at the end of the work shift; and (7) limited to occasional interaction with co-workers and the public.

In her opinion, the ALJ stated that the following RFC limitations were included to address Deischer's syncope episodes: sedentary work; seizure precautions, which include never climbing ladders, ropes, or scaffolds, avoiding all exposure to hazards, including vibration; and limited to simple, routine, and repetitive tasks. (Tr. 26.) Deischer contends that the RFC limitations are insufficient, because they do not account for on the job occurrence of syncopal episodes three to four times per week. Deischer testified that he had at times experienced "passing out" three to four times per week at the time of the hearing, but he had previously only experienced the episodes two to three times per month. (Tr. 64.) Deischer testified that the episodes lasted between 30 seconds and a couple of minutes. (Tr. 65.) He testified that he had blacked out and fell to the floor while walking or going to the bathroom. (Tr. 64.) The

15

vocational expert testified that if a person just nods off and wakes up in a few minutes, there would be no loss of production and disruption to the workplace so it would be a non-issue. (Tr. 82.) The vocational expert also testified that if the person fell out of their seat during an episode that would be disruptive and if it continually happened, it could lead to their dismissal. (Tr. 82.)

Based on a review of the evidence in the record as a whole, the Court finds that substantial evidence supports the ALJ's RFC determination regarding Deischer's syncopal episodes. The ALJ's credibility findings and the detailed medical record provide support for the ALJ's limitations. A review of the record as a whole demonstrates that Deischer has some restrictions in his functioning and ability to perform work related activities, however, he did not carry his burden to prove a more restrictive RFC determination. *See Pearsall*, 274 F.3d at 1217 (it is the claimant's burden, not the Social Security Commissioner's burden, to prove the claimant's RFC). Therefore, the Commissioner's decision will be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that the relief requested in Plaintiff's Complaint and Brief in Support of Complaint is **DENIED**. [Docs. 1, 20.]

**IT IS FURTHER ORDERED** that the Court will enter a judgment in favor of the Commissioner affirming the decision of the administrative law judge.

Dated this 25th day of May, 2016.

    /s/ Nannette A. Baker
NANNETTE A. BAKER
UNITED STATES MAGISTRATE JUDGE